NOTICE
Decision filed 06/10/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241235-U

NOS. 5-24-1235, 5-24-1236 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | Nos. 23-CF-531, 23-CF-532 |
| | ) | |
| TROY L. SCHNEIDER, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1  *Held*: These consolidated appeals must be dismissed because the defendant did not comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), a condition precedent to an appeal from a plea of guilty. Because no argument to the contrary would have arguable merit, appellate counsel is granted leave to withdraw, and the defendant's appeals are dismissed.

¶ 2  The defendant, Troy Lee Schneider, is presently incarcerated in the Illinois Department of Corrections (IDOC), following his open pleas of guilty to two counts of the offense of arson, in two separate cases, which led to two separate appeals. We have consolidated the appeals for decision on our own motion. The Office of the State Appellate Defender (OSAD) was appointed as the defendant's counsel in both appeals. OSAD has concluded that each appeal lacks arguable merit for the same reason, and, on that basis, has filed motions for leave to withdraw as counsel, pursuant to *Anders v. California*, 386 U.S. 738 (1967), along with supporting memoranda of law.

1

OSAD properly served the defendant with notice in each appeal. This court gave the defendant the opportunity to file responses to OSAD's motions. The defendant has not filed a response in either appeal. Having considered OSAD's *Anders* motions and memoranda, and the entire record on appeal in each case, this court agrees with OSAD's assessment. We therefore grant OSAD's motions to withdraw, and we dismiss the defendant's appeals.

¶ 3                                    I. BACKGROUND

¶ 4     On September 21, 2023, the defendant was charged by information in Jackson County case No. 23-CF-531 with one count of arson, a Class 2 felony, in violation of section 20-1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/20-1(a)(1) (West 2022)). The information alleged that on or about September 11, 2023, the defendant "by means of fire, knowingly damaged partially or totally, the real property of Republic and Southern Illinois Waste Company, being the dumpsters, located at 1250 E. Main Street, Carbondale, Jackson County, Illinois, having value exceeding $150.00, and doing so without the owner's consent."

¶ 5     Also on September 21, 2023, the defendant was charged by information in Jackson County case No. 23-CF-532 with one count of aggravated arson, a Class X felony, in violation of section 20-1.1(a)(1) of the Code (720 ILCS 5/20-1.1(a)(1) (West 2022)). The information alleged that on or about May 1, 2023, the defendant "by means of fire, knowingly damaged partially or totally, the building of Sunny Street Café, located at 900 E. Walnut, Carbondale, Jackson County, Illinois, when he knew or reasonably should have known that people were present, and doing so without the owner's consent."

¶ 6     The following day, the public defender was appointed to represent the defendant in both cases. At a hearing on that date, the defendant was advised as to the charges in both cases, and as to charges in multiple other pending cases against him, three of which also involved allegations of

committing the offense of arson by setting fire to dumpsters or trash containers at businesses in Carbondale.

¶ 7 On September 25, 2023, defense counsel filed a motion to appoint an expert to determine the defendant's fitness to stand trial, as well as his sanity at the time of the alleged offenses. Therein, counsel stated that he "had a *bona fide* doubt as to the [d]efendant's fitness to understand the nature of the proceedings and to assist in [his] own defense as a result of his mental condition." Counsel further stated that he "had a *bona fide* doubt as to whether the [d]efendant had the mental capacity to appreciate the criminality of [his] conduct."

¶ 8 At a hearing held on February 20, 2024, defense counsel stated that a report had been filed by Dr. Klug, "indicating that [the defendant] is fit to stand trial at this point in time." The trial court stated that it had read the report and would find the defendant fit to stand trial. The State stipulated to Dr. Klug's findings, as did defense counsel.

¶ 9 On July 8, 2024, the defendant appeared in court with counsel. The trial court stated that it had been advised that the defendant had "reached agreements to resolve all of his pending cases" by entering open pleas of guilty "to various counts in two cases:" Nos. 23-CF-531 and 23-CF-532. The trial court admonished the defendant with regard to the process involved in an open guilty plea, including that a sentencing hearing would be held at a later date, at which the defendant could call witnesses on his behalf. The defendant repeatedly stated that he understood the open plea process, and the sentencing process that would follow. The trial court also admonished the defendant with regard to the rights the defendant was giving up by pleading guilty.

¶ 10 The trial court then explained to the defendant the arson charge in case No. 23-CF-531, and the potential penalties the defendant faced if convicted of that charge. The defendant stated that he understood the charge and the range of penalties he faced. The trial court next noted that in

3

case No. 23-CF-532, the defendant also would be pleading guilty to arson, because as part of the plea agreement, the State had agreed to amend the charge from the previously charged offense of aggravated arson to the offense of arson. The trial court again admonished the defendant as to the charge of arson and the range of penalties the defendant faced, and the defendant again stated that he understood the charge and the range of penalties. The trial court added "that if certain findings are made or arguments made, there are situations where [the defendant's sentences] could run consecutive, meaning one after the other," but that it was also possible that the sentences would be "concurrent, at the same time." The defendant stated that he did not have any questions about the possible sentences.

¶ 11    The trial court thereafter ensured the defendant understood "everything we have gone through in court here today," that the defendant intended to enter open pleas of guilty, and that the defendant's pleas were voluntary, in that no one had forced or threatened the defendant. The trial court also ensured that no other promises had been made to the defendant, and that the defendant could "read, write and understand English." The defendant agreed that he had read, signed, and understood the written plea of guilty in each case, and stated that he had no questions about his pleas.

¶ 12    The State then presented the factual basis for each plea, stating, with regard to case No. 23-CF-531, that Chief Rob Miller of the Carbondale Fire Department would testify that on September 11, 2023, the defendant "was identified as a suspect in a fire outside of Harbor Freight lighting a trash can on fire," and that "[i]n a post-*Miranda* interview, he confessed to lighting a fire in that trash can." With regard to case No. 23-CF-532, the factual basis presented by the State was that Chief Miller would testify that on May 1, 2023, the Carbondale Fire Department responded to Sunny Street Café in reference to a fire in the alley alongside of the rear of the business, that "fire

4

investigators were able to determine that the fire was caused by human involvement," that the defendant "became a suspect pursuant to video surveillance, as well as witnesses seeing him in the area at the time that this fire was set," and that the defendant subsequently confessed to lighting the fire. Defense counsel stated that after reviewing the discovery provided by the State, he agreed that "those would be the facts" presented by the State if the defendant went to trial. Both parties requested the preparation of a presentence investigation report (PSI).

¶ 13 The trial court again asked the defendant if he wished to proceed with the open pleas, to which the defendant responded, "Yes." The trial court stated that after questioning the defendant, the court found "his open pleas are knowingly, voluntarily entered into and nobody forced or threatened [the defendant] into these decisions." The trial court also found that the defendant understood "everything going on in court here today and that these are his decisions." The court accepted the open pleas, ordered the PSI, and stated it would set the case for "a full sentencing hearing" in approximately 60 days.

¶ 14 The trial court stated that the parties had agreed that the defendant was to "be released from the Jackson County Jail on a GPS electronic monitoring order to come back to court on that sentencing date." The court stated to the defendant, "I know you'll come back to court," then advised the defendant, "If you fail to appear, though, on the sentencing hearing date, it will not delay matters. Any sentencing from the minimum in each case to the maximum could be imposed running as we have indicated." The trial court added, "I know you'll show up. Any questions about that?" The defendant responded, "No." The trial court thereafter stated that the defendant had "been advised of sentencing *in absentia*." The trial court then went off the record, without setting the sentencing hearing date on the record. However, a record sheet entry in each case for July 8, 2024, indicates that the sentencing hearing was set for September 10, 2024, and that notice of the

hearing was to be mailed to the defendant. Also on July 8, 2024, a written copy of the defendant's open plea of guilty was filed in each case.

¶ 15 On September 10, 2024, the defendant failed to appear at his sentencing hearing. Prior to addressing the defendant's absence, the trial court summarized the defendant's open guilty plea proceedings, and noted that in exchange for the defendant's pleas, the State had agreed to dismiss "many cases" that included "multiple additional arson charges ***, thefts, retail thefts, and some other matters." The trial court added that the defendant "was released out on a pretrial service order and electronic monitoring, GPS, and he was specifically advised that a PSI was ordered, the case was set for sentencing, he was given that date, handed that date, written down and provided to him, the sentencing date which was today." The trial court stated that the defendant "was also advised of sentencing *in absentia* and that by not showing up he would be waiving his right to be present, the sentencing hearing would occur, anything from the minimum to the maximum in each of these cases could be imposed and that by not showing up he would be waiving his right to be present, it would not work to delay these matters." The trial court added that it had been present in the courtroom for the previous 2.5 hours, without leaving, and that the defendant was not present, even though the sentencing hearing was scheduled to begin half an hour earlier.

¶ 16 The State announced that it was ready to proceed, and would object to any continuances. Defense counsel objected to proceeding in the absence of the defendant. The trial court noted the defense objection, but ruled that the sentencing hearing would proceed without the defendant. No witnesses were presented by either side. The State argued "for a sentence of 13 years, however the court wants to distribute that between the cases, whether that be 7 and 6 or however the court would deem fit." The State argued that a 13-year sentence was appropriate because of the defendant's criminal history, as well as his lack of compliance with earlier court orders. Defense

6

counsel argued that the defendant "had either a substance abuse issue or a mental health issue." He argued that a sentence of 13 years was excessive, and asked the court to "fashion a sentence that's appropriate to try to get him the help that he needs." He also asked for the sentences in the two cases to run concurrently.

¶ 17　The trial court stated that it would consider the arguments and recommendations of counsel, all the information contained within the PSI, the fact that the defendant entered open pleas of guilty and "took responsibility for those actions," and the fact that "multiple cases were dismissed as part or pursuant to his open pleas." The trial court stated that "after considering all of these things," the court would sentence the defendant to five and a half years in IDOC in case No. 23-CF-531, to be served at 50%, and to be served consecutively to a sentence of six and a half years in IDOC in case No. 23-CF-532. The trial court stated that the sentence in case No. 23-CF-532 would be served at 50% as well. The trial court added that the defendant would "get credit for all time served so far in the Jackson County Jail on both cases."

¶ 18　The trial court stated that it was the court's "policy *** to go ahead and give the motion and appeal rights even though" the defendant was not present, and to do so on the record. Accordingly, the trial court stated the defendant's appeal rights in detail on the record. The trial court issued a no bond arrest warrant, pursuant to which the defendant was to "be picked up, detained, and transferred to [IDOC] to serve out the remainder of his sentences in these two cases." As OSAD points out, the common law record indicates that the arrest warrant was served on the defendant at the Jackson County Jail on September 13, 2024, which was three days after he was sentenced, but the record does not indicate that the defendant was brought before the trial court to explain his absence from the sentencing hearing, and it does not indicate when the defendant

7

entered the jail. As OSAD further notes, the record is devoid of any formal postplea or postsentencing motions filed by either the defendant or by defense counsel.

¶ 19    On October 18, 2024, three handwritten letters from the defendant to the trial court were filed stamped by the circuit clerk in case No. 23-CF-531. In the first handwritten letter, which was not otherwise dated, the defendant stated that on October 6, 2024, he received a copy of the Statement of Facts for the case, and was concerned that his speedy trial rights were violated. He thereafter stated that at his "last court appearance" he "was forced to sign some papers that" he now regretted. He did not specify what those papers were. He added, "I thought I would get to court on the 24th of Aug[ust] and try my best. But I didn't have $2.00 to get on the bus. And the bus driver thought I was making up a story to get a free bus ride." The defendant did not indicate why he was going to court on August 24, and the record does not indicate that he was scheduled to attend court on that date.

¶ 20    In the second handwritten letter, which included a handwritten date of October 7, 2024, the defendant stated that he "was in Jackson County Jail for 13 months and [he] didn't get the credit." He added, "I'm writting [*sic*] in regards to see if you could help me with a [*sic*] appeal. I remember that you mentioned I could appeel [*sic*] my case in court." He thereafter asked the trial court to "please send me a form, or motion to appeal [*sic*] my case."

¶ 21    In the third handwritten letter, which was not otherwise dated, the defendant asked the trial court to retrieve a "letter of [a]cceptance to the [L]ite [H]ouse" from defense counsel, and to send the letter to the defendant "in the mail." He asked that the letter be sent to his "case worker or case manager at [his] facility."

¶ 22    A record sheet entry in case No. 23-CF-531, dated October 18, 2024, states, two consecutive times, "Correspondence filed." The entry then states, "Judge review set for [October

21, 2024,] at 8:00 in courtroom ABC," followed by a notation that two pieces of correspondence had been forwarded to defense counsel. There is no indication in the record that the trial court ever reviewed the correspondence, or took any action related to it.

¶ 23     On November 18, 2024, the defendant filed a *pro se* notice of appeal in the trial court, using a pre-printed form. He included both case Nos. 23-CF-531 and 23-CF-532 as circuit court case numbers in the form's caption area. In the space provided to describe the "[d]ate of judgment or order" being appealed, the defendant wrote, "9-10-24 Sentenced (in ABSenTE) [*sic*]." The notice of appeal did not mention the guilty plea proceedings at all. The notice of appeal was accompanied by a certificate of service that stated that the notice had been placed in the prison mail system on November 7, 2024. This court assigned case No. 5-24-1235 to the defendant's appeal in case No. 23-CF-531, and case No. 5-24-1236 to the defendant's appeal in case No. 23-CF-532. Thereafter, this court granted, in each appeal, OSAD's amended motion for leave to file late notice of appeal, allowing the two appeals to move forward.

¶ 24                                    II. ANALYSIS

¶ 25     As noted above, in each appeal OSAD has filed an *Anders* motion to withdraw as counsel. In the legal memorandum that accompanies each motion, OSAD raises the same two potential issues: (1) whether this court is precluded from considering the defendant's appeals on the merits, because the defendant did not file a timely motion to withdraw his guilty plea, or a motion to reconsider his sentence, as required by Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), before filing his notice of appeal; and (2) whether the trial court erred in sentencing the defendant *in absentia*. OSAD concludes that this court is precluded from considering the merits of the defendant's appeals, and with regard to the merits, concludes that the trial court did not err in sentencing the defendant *in absentia*. For the reasons that follow, we agree that this court is

9

precluded from considering the defendant's appeals on the merits. We therefore grant OSAD's motions to withdraw, and we dismiss the defendant's appeals.

¶ 26    As described above, on November 18, 2024, the defendant filed a *pro se* notice of appeal in the trial court, using a pre-printed form. In the space provided to describe the "[d]ate of judgment or order" being appealed, the defendant wrote, "9-10-24 Sentenced (in ABSenTE) [*sic*]." The notice of appeal did not mention the guilty plea proceedings at all. Pursuant to Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), a defendant who enters an open plea of guilty and later desires to challenge only the defendant's sentence, may not do so "unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence." "Compliance with Rule 604(d) is a condition precedent to an appeal from a plea of guilty, and dismissal is proper when this condition is not met." *People v. Erby*, 2023 IL App (3d) 220400, ¶ 9. This court reviews *de novo* whether there has been compliance with Rule 604(d). *Erby*, 2023 IL App (3d) 220400, ¶ 8.

¶ 27    Here, the defendant entered open pleas of guilty in both case Nos. 23-CF-531 and 23-CF-532. He did not file a motion to reconsider his sentence in either case within 30 days of the date on which he was sentenced—in fact, he did not file a motion to reconsider his sentence at all.[1] Accordingly, his appeals of his sentences must be dismissed unless a recognized exception, excusing the failure to comply with Rule 604(d), is applicable to this case. We agree with OSAD

---

[1]Even under an extremely liberal construction, the defendant's handwritten letter in case No. 23-CF-531, dated October 7, 2024, in which the defendant stated that he "was in Jackson County Jail for 13 months and [he] didn't get the credit," and in which he added, "I'm writting [*sic*] in regards to see if you could help me with a [*sic*] appeal," is not a motion to reconsider his sentence. It is, at most, a claim for additional presentence custody credit to which he appears to believe he is entitled. Such a claim is governed by Illinois Supreme Court Rule 472(a) (eff. Feb. 1, 2024), which provides that the trial court retains jurisdiction to correct certain errors in sentencing—including errors in the calculation of presentence custody credit—"at any time following judgment and after notice to the parties, including *** on motion of any party."

10

that to the extent the defendant might claim an exception excusing his failure to comply with Rule 604(d) based upon the allegation that his failure to file a motion to reconsider his sentence resulted from the ineffective assistance of his plea counsel, the record on appeal contains insufficient information, in either case, to support such a claim of ineffective assistance of counsel.

¶ 28    We also agree with OSAD that it is well established that another exception excusing the failure to comply with Rule 604(d) exists if the trial court fails to properly admonish the defendant, at the time the sentence is imposed, of the defendant's appellate rights pursuant to Illinois Supreme Court Rule 605 (eff. Jan. 1, 2026). See, *e.g.*, *People v. Flowers*, 208 Ill. 2d 291, 301 (2003), *as modified on denial of reh'g* (Jan. 26, 2004). In such circumstances, the appeal is not dismissed; instead, the case is remanded to the trial court for strict compliance with Rule 604(d). *Flowers*, 208 Ill. 2d at 301. However, for the following reasons, we conclude this exception is not applicable to the defendant's appeals.

¶ 29    As explained above, during the open guilty plea proceedings, the trial court stated to the defendant, "I know you'll come back to court," then advised the defendant, "If you fail to appear, though, on the sentencing hearing date, it will not delay matters. Any sentencing from the minimum in each case to the maximum could be imposed running as we have indicated." The trial court added, "I know you'll show up. Any questions about that?" The defendant responded, "No." The trial court thereafter stated that the defendant had "been advised of sentencing *in absentia*."

¶ 30    "When a defendant has been advised that his or her failure to appear at trial may lead to the court proceeding in their absence and the defendant then fails to appear, the defendant has effectively waived his or her constitutional right to be present at trial and any attendant rights." *People v. Hare*, 2022 IL App (2d) 190848, ¶ 26. Likewise, a defendant's failure to appear at a sentencing hearing is deemed to be a waiver of the defendant's right to be present for sentencing.

11

*Hare*, 2022 IL App (2d) 190848, ¶ 26. As a consequence, "where a defendant is willfully absent from his or her sentencing hearing, he or she has waived his or her right to be personally informed of his or her appeal rights." *Hare*, 2022 IL App (2d) 190848, ¶ 28.

¶ 31 Accordingly, in these appeals, although the trial court informed the defendant, *in absentia*, of the defendant's appeal rights, the trial court was not required to do so. Therefore, the exception that excuses a defendant's failure to comply with Rule 604(d) if the trial court fails to properly admonish the defendant, at the time the sentence is imposed, of the defendant's appellate rights and responsibilities, does not excuse the defendant's failure to comply with Rule 604(d) in this case, because pursuant to the foregoing precedent, the defendant waived his right to be personally informed of his appeal rights. *Hare*, 2022 IL App (2d) 190848, ¶ 28. Because no recognized exception excuses the defendant's failure to comply with Rule 604(d), his appeals must be dismissed.

¶ 32 However, as OSAD points out, our conclusion does not mean that the defendant has no means to seek a remedy. Longstanding precedent provides that a defendant who is sentenced *in absentia*, attempts to appeal, and fails to comply with Rule 604(d), may seek to obtain review of his or her sentence under section 115-4.1(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4.1(e) (West 2024)). See, *e.g.*, *People v. Woolridge*, 292 Ill. App. 3d 788, 792-93 (1997) (section 115-4.1(e) is part of a statutory framework designed to ensure due process protections for people tried and/or sentenced *in absentia*). Such a proceeding must be initiated in the trial court. Because that has not happened at this point, there is no issue properly before this court with regard to any such proceeding.

¶ 33                          III. CONCLUSION

¶ 34    For the foregoing reasons, the motions of appointed counsel to withdraw are granted, and

the defendant's appeals are dismissed.

¶ 35    Motions granted; appeals dismissed.